IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHAEL HAYES,                          *

    Petitioner,                       *

                        *

       v.                              CIVIL NO.:WDQ-11-1463
                *         CRIMINAL NO.:  WDQ-08-0585
UNITED STATES OF AMERICA,

                        *

    Respondent.                       *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Michael Hayes pled guilty to conspiracy to commit bank fraud and aggravated identity theft. On June 22, 2010, he was sentenced to 144 months imprisonment. He was ordered to pay $521,312.67 in restitution. Pending is Hayes's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Court has determined that no hearing is necessary. *See* Rule 8 of the Rules Governing § 2255 Proceedings. For the following reasons, Hayes's motion to correct sentence will be denied.

I.    Background[1]

Between September 2005 and November 2008, Hayes, Robert Forrest, Byron Green, John Forrester, and Tomeka Harris stole credit cards and credit card numbers, and used them to buy

---

[1] The facts were agreed to by Hayes and included in his June 17, 2010 Plea Agreement. ECF No. 164.

merchandise or sold them to others to buy valid gift cards. ECF No. 164 at 9.

Initially, Hayes bought fake credit cards and gift cards from his co-conspirators, who had re-encoded the magnetic strip on the cards with data from stolen credit card account numbers they bought on the internet. *Id.* Hayes eventually bought equipment that enabled him to re-encode the cards with stolen numbers, buying the stolen numbers from co-conspirators. *Id.* He manipulated the tracking data behind the stolen numbers to correspond to the name on the card. *Id.*

On May 17, 2006, Hayes used an account number ending in 8516, issued by Bank of America to "MM," an individual, to buy items from a Baltimore Home Depot. *Id.*; ECF No. 226 at 19:5. He also sold his re-encoded cards to others and paid "strikers" to buy valid gift cards using the fraudulent cards. ECF No. 164 at 9.

Hayes and his co-conspirators stole credit card information related to over 1,000 stolen cards issued by more than 10 financial institutions, and obtained between $400,000 and $1,000,000 in credit. *Id.* at 10.

On December 16, 2008, the grand jury indicted Hayes and his co-conspirators on 11 counts of bank fraud, identity theft, and related charges. ECF No. 1. On January 6, 2009, the government filed a superseding indictment charging related counts and adding

a defendant.   ECF No. 4.   On February 16, 2010, Hayes pled
guilty, pursuant to a plea agreement ("the February plea
agreement"), to one count of conspiracy to commit bank fraud and
one count of aggravated identity theft.   ECF No. 115.

In the February plea agreement, Hayes stipulated to the
facts of the offense and agreed that, other than his criminal
history category, no sentencing guidelines factors were in
dispute.   ECF No. 116.   The base offense level of 7 under
U.S.S.G. §2B1.1(a)(1) was upwardly adjusted 18 levels for the
amount of loss, number of institutional victims, and use of
specific means (all §2B1.1(b) adjustments), the offense level
without adjustments for acceptance of responsibility was 25 for
the bank fraud count.   Id. at 4.

The government agreed not to oppose a two-level reduction in
the offense level for acceptance of responsibility and to move
for another one-level decrease under U.S.S.G. §3E1.1(b).   Id.
After those adjustments the total offense level was 22.[2]   The
agreement stated that the government could "oppose any adjustment
for acceptance of responsibility if the Defendant . . . obstructs
or attempts to obstruct justice prior to sentencing[, or] engages

---

[2] At sentencing, the Court determined that Hayes's criminal
history category was VI.   ECF No. 226 at 28:24-25.   Under the
February plea agreement, his guidelines range was 84 to 105
months on the bank fraud count, and 24 months to run consecutive
on the aggravated identity theft count, resulting in a potential
sentence of 108 to 129 months.   See U.S.S.G. Ch.5 Pt.A.

in any criminal conduct between the date of this agreement and the date of sentencing." *Id.*

Aggravated identity theft carries a mandatory 24 month sentence, consecutive to any other sentence. *Id.* at 5.

The parties stipulated to a 63 month sentence on the bank fraud count, to be followed by a 24 month sentence on the aggravated identity fraud count, for an aggregate sentence of 87 months imprisonment. *Id.* Hayes also agreed to pay "the full amount of the victims' losses" in restitution. *Id.*

Hayes agreed that he would "not . . . engage[] in conduct . . . which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1" before he was sentenced, and if he did, the government would "be relieved of its obligations" in the February plea agreement. *Id.* at 6. The government would "[s]pecifically . . . be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement." *Id.* In that case, Hayes agreed that he would not be allowed to withdraw his guilty plea. *Id.* at 7.

Hayes and his attorney, Thomas Crowe, Esquire, signed the February plea agreement, indicating that Hayes had read and "carefully reviewed every part" with Crowe, and that he "voluntarily agree[d] to it." *Id.* at 8.

On April 29, 2010, Hayes was charged with attempted theft in Baltimore County. ECF No. 164 at 10. The incident was captured on video, and Hayes left his driver's license in the store. *Id.* On April 30, 2011, Hayes told his pretrial services officer, who had called to ask whether he had removed his electronic monitoring device, that the device was malfunctioning but he was still wearing it. *Id.* Hayes maintains that that was true. *Id.* The next day, the officer found that Hayes had removed the electronic monitoring device and fled. *Id.* On May 8, 2010, Hayes was arrested in New Jersey for violating his terms of pre-sentence supervision. *Id.*

The parties negotiated a new plea agreement ("the June plea agreement"), and on June 22, 2011, Hayes was re-arraigned and sentenced pursuant to that plea agreement. ECF Nos. 162-165. Under the June agreement, the total offense level for the bank fraud count was 27 because the parties agreed that (1) Hayes was no longer entitled to any adjustment for acceptance of responsibility because (2) he had obstructed the administration of justice by removing his electronic monitoring device and fleeing; this resulted in a two-level upward adjustment in the offense level. ECF No. 164 at 4.

In exchange for Hayes's guilty plea, the government promised "not to seek new federal charges against [Hayes] arising from his flight from supervision" or from the state attempted theft

charge, and would "take no position with regard to any state prosecution on [those] charges." *Id.* at 5.

The parties agreed that a sentence of 144 months was appropriate (120 months for bank fraud and 24 months consecutive for identity fraud). *Id.* at 5. Hayes again agreed to pay full restitution. *Id.*

The parties also agreed that the June agreement "supersede[d] any prior understandings, promises, or conditions between [them] and, together with the Sealed Supplement, constitutes the complete plea agreement in this case." *Id.* at 7. Hayes agreed that "there [were] no other agreements, promises, undertakings or understandings between [him and the government] other than those set forth in [the June agreement] and the Sealed Supplement." *Id.*

Hayes and Crowe signed the June plea agreement, indicating that Hayes had read and "carefully reviewed every part" with Crowe, understood it, and "voluntarily agree[d] to it." *Id.* at 8.

At the June 22, 2010 rearraignment and sentencing, Assistant United States Attorney Tamera Fine stated that the June agreement was "different" from the February plea agreement. She noted the new two-level adjustment for obstruction of justice based on Hayes's flight and that Hayes was not entitled to an adjustment for acceptance of responsibility. ECF No. 226 at 10:8-25. Under

oath, Hayes told the Court that by signing the June plea
agreement, he acknowledged that he "ha[d] read it, . . .
discussed it with [his] lawyer, . . . understood it, and . . .
agree[d] to it."   *Id.* 14:7-10.   Hayes said that he was "satisfied
with [Crowe's] services."   *Id.* 9:18-19.   Hayes swore that other
than the promises in the June plea agreement, no one had "made
any other promise or prediction to [him] about the sentence" the
Court would give him.   *Id.* 15:7-10.   Crowe also stated, in
Hayes's presence, that Hayes was facing a sentence "[t]hat is
some 57 months more than the prior agreed-on plea."   *Id.* 26:19-
20.

The Court accepted the presentence report's calculation that
Hayes was in Criminal History Category VI and had a total offense
level of 27.   It adopted the parties' recommendation of a 144
month sentence, departing downward to Criminal History Category V
and imposing 120 months on the bank fraud count and 24 months
consecutive on the identity fraud count.   *Id.* 29:10-17.   The
Court noted that it did so despite Hayes's offense conduct and
flight during supervision, which would "certainly establish the
advisability of a sentence . . . at the upper end of the
appropriate guidelines."   *Id.* 29:8-10.

On May 27 2011, Hayes moved to vacate his sentence pursuant
to 28 U.S.C. § 2255.   ECF No. 208.   On July 21 2011, the
government moved for discovery on the motion.   ECF No. 215.   On

August 3, 2011, the Court denied the discovery motion.  ECF No.
224.  On November 24, 2011, the government filed its opposition
to Hayes's motion.  ECF No. 234.

II.  Analysis

Hayes contends that he is entitled to a new sentencing
because he was denied effective assistance of counsel when Crowe
(1) failed to contest the "restitutional schedule" despite
Hayes's request "to have all [restitution] figure[s] proven
[through] testimony," and the restitution amount exceeded that
allowed under the Mandatory Victims Restitution Act; (2) did not
object to the conviction for aggravated identity theft when the
facts stipulated did not prove the elements of the crime; (3) did
not object to the government's failure to adhere to the February
plea agreement; and (4) told him the government agreed "not to
seek new charges or enhancements" for absconding from
supervision.  ECF No. 208 at 8.

A.    Ineffective Assistance of Counsel

1.    Legal Standard

The Sixth Amendment guarantees the effective assistance of
counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To
prove ineffective assistance, Hayes must show: (1) counsel's
performance was deficient and (2) the deficiency prejudiced his
defense.  *Id.* at 687.  To show deficient performance, Hayes must
establish that counsel made errors so serious that the

"representation fell below an objective standard of reasonableness."  *Id.* at 688.

To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because Hayes argues that the sentence--rather than the conviction--was imposed without effective assistance of counsel, he must show that his sentence would have been less if counsel had not erred.  *United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996).[3]

2.   Restitution

Hayes contends that his restitution order violates the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*  He argues that restitution should be limited to the loss incurred by the seven institutions listed in the superseding indictment.  ECF No. 208 at 12.

---

[3] When a defendant who pled guilty challenges his conviction or the *imposition* of sentence, the focus is whether counsel's "performance affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  That defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  Here, Hayes challenges primarily his attorney's performance at sentencing.  *See United States v. Tucker*, 603 F.3d 260, 267 (4th Cir. 2010) (applying *Breckenridge* standard to challenge to sentence imposed on guilty plea); *Tilghman v. United States*, No. 08-831, 2008 WL 4372812 at *2 (D. Md. Sep. 18, 2008).  With respect to his claim that he should not have been convicted of aggravated identity theft, Hayes must prove he would have insisted on going to trial.  *Lockhart*, 474 U.S. at 59.

The MVRA requires the Court to order the defendant to make restitution to all identifiable victims of an offense that suffer pecuniary loss from the offense.   18 U.S.C. § 3663A(c)(2)(B). The Court must (1) order the probation officer to report information to determine restitution and (2) disclose to the defendant all portions of the restitution report.   18 U.S.C. § 3664(a)-(b).   The Court *may* "hear testimony" on restitution and determine the amount lost up to 90 days after sentencing.   *Id.* § 3664(d)(5).   The Court determines restitution disputes based on the preponderance of the evidence.   *Id.* § 3664(e).   The Court *must* order restitution to "each victim in the full amount of the victim's losses."   *Id.* § 3664(f)(1)(A).

The restitution amount is limited to loss caused by conduct "[]related to the offense of conviction."   *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting precursor to MVRA).   However, the loss need not be charged in the indictment. *See United States v. Newsome*, 322 F.3d 328, 338, 342 (4th Cir. 2003) (defendant was convicted of theft and conspiracy; district court properly found that the conspiracy caused $250,000 loss, although indictment mentioned only $1,784 theft).

The indictment charged Hayes with fraudulently obtaining "money and property under the custody and control of financial institutions."   ECF No. 4 ¶21.   It did not limit the victims to the seven financial institutions identified in the indictment.

*See id.* ¶2.  Accordingly, the Court was authorized to order restitution to all banks that suffered loss from the fraud charged in Count One.  *See Newsome*, 322 F.3d at 342.

Further, Hayes *agreed* that more than ten banks were involved and that the loss exceeded $400,000.  ECF No. 164 at 10; ECF No. 226 at 23:1-4.  AUSA Fine announced at sentencing that the parties had agreed that $521,312.37 restitution was appropriate. ECF No. 226 at 11:13-15.  Despite Hayes's now asserted desire for testimonial proof of the loss, he did not dispute Fine's statement when he addressed the Court.  *See id.* 11:16-20; 28:1-15.  Because the parties agreed on the restitution amount, the government was not required to prove that amount, and did not need to present witness testimony.

As the government was not required to prove the restitution amount at sentencing, Crowe's failure to request such proof was not erroneous.  Accordingly, his representation was not in-effective.  *See Strickland*, 466 U.S. at 688.

        3.    Proof of Aggravated Identity Theft

Hayes contends that the facts stipulated in the plea agreement do not support a conviction for aggravated identity theft because they do not allege that he knew the credit cards belonged to real individuals.  ECF No. 208 at 16.  Hayes argues that he is "actually innocent" of the aggravated identity theft conviction, but pled guilty because Crowe "clearly disagreed and

11

advised [him] to plead guilty." *Id.* at 17.   Accordingly, he
contends, by advising him to plead guilty Crowe denied him
effective assistance.   *Id.*

18 U.S.C. § 1028A prohibits the knowing transfer,
possession, or use of a means of identification of another person
"during and in relation to" certain crimes, including bank fraud.
18 U.S.C. § 1028A(a)(2), (c)(5).   A "means of identification"
includes "any name or number that may be used, alone or in
conjunction with any other information, to identify a specific
individual."   18 U.S.C. § 1028(d)(7).   A "unique electronic
identification number" is a means of identification.[4]   *Id.* §
1028(d)(7)(C).   A corporate entity is not an "individual" under
18 U.S.C. § 1028.   *Cf.* 18 U.S.C. § 1030(e)(12) (defining person
as an "individual" *or* "corporation" or "legal . . . entity").

The June plea agreement states that on May 17, 2006, Hayes
"used stolen credit card account number ****-****-****-8516,
issued by Bank of America to 'MM,' to purchase merchandise."   ECF
No. 164 at 9.   Hayes argues that the government should have been
required to prove that he knew the card he used was encoded with
MM's credit card number, or that he encoded MM's card himself.
He argues that under the stipulation he might have thought the

---

[4] This includes credit card numbers.   *United States v.
Melenderez*, 389 F.3d 829, 835 (9th Cir. 2004).

12

number belonged to a "corporation or company, not a specific individual." ECF No. 208 at 16.

The indictment identifies the account information as belonging to "individuals." ECF No. 4 at 2. The plea agreement also informed Hayes that the identification document must have belonged to another person. ECF No. 164 ¶2.

Hayes admitted in the plea agreement that he encoded some of the cards himself, but he did not stipulate to encoding the MM card. ECF No. 164 at 9. However, during the sentencing hearing, Fine stated that the Bank of America account was "issued . . . to an individual." ECF No. 226 at 19:5. Neither Crowe nor Hayes disagreed. *See id.* at 22:8-20; 28:1-15. Accordingly, Hayes admitted all elements of aggravated identity theft. Crowe did not err by failing to request further proof.

4. Withdrawal from the February Plea Agreement

Hayes argues that Crowe incorrectly advised him that the government could withdraw from the February plea agreement after he absconded. ECF No. 208 at 17. He contends that because he could not withdraw his guilty plea, "neither party [had] the right to withdraw from [the] plea agreement under any circumstances." *Id.* at 18.

The February plea agreement stated that the government would "be relieved of its obligations to [Hayes] as reflected in this agreement" if he breached it, including by "engag[ing] in conduct

13

. . . which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1." ECF No. 116 ¶14.

Section 3C1.1 states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct or (B) a closely related offense, increase the offense level by 2 levels.

Covered conduct includes, but is not limited to, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. §3C1.1, comment. n.4(E).

"Custody" under §3C1.1 is broader than the statutory definition. *United States v. Swanson*, 253 F.3d 1220, 1223-24 (10th Cir. 2001). Under §3C1.1, the defendant is in custody when a "substantial restraint" is placed on his "liberty," though the conditions are "less confining than [those of] a jail or prison." *Hayes v. United States*, 281 F.3d 724, 725 (8th Cir. 2002) (resident required to stay in halfway house was in custody). Under §3C1.1, removing an electronic monitoring device and fleeing home confinement constitutes escape from custody. *United States v. Fournier*, 361 F.3d 42, 43 (1st Cir. 2004).

Hayes admitted that he "removed his electronic monitoring device and fled" before sentencing. ECF No. 164 at 10. As that

14

behavior "would justify a finding of obstruction of justice under U.S.S.G. §3C1.1," the government could have been relieved from its obligations under the February plea agreement. *See* ECF No. 116 ¶14. Then, it would have been able to (1) hold Hayes to his guilty plea, (2) seek a longer sentence than agreed to in the February agreement, and (3) prosecute him for the April 29, 2010 theft. *Id.* Instead, it allowed Hayes to enter a new agreement to which the parties "mutually consent[ed]."[5] ECF No. 226 at 4:10-21. Hayes agreed that the June agreement nullified the February agreement. ECF No. 164 at 7. As the government was not bound by the February plea agreement, Crowe's request that the February agreement be reinstated would have been futile; his failure to make that request was not ineffective assistance.

5. June Plea Agreement Adjustments

As discussed above, the government was not bound by the February plea agreement. Hayes knowingly and voluntarily agreed to a new plea agreement in June, in which he stated that he understood and agreed that he was subject to an adjustment for obstruction of justice and was ineligible for an adjustment for

_____

[5] The Court interprets plea agreements according to the principles of contract law, though with "greater scrutiny" than a commercial contract. *United States v. Jordan*, 509 F.3d 191, 196-97 (4th Cir. 2007). Parties to a contract may agree to substitute a new agreement for the old one, extinguishing the obligations of the earlier agreement in consideration for the promises made in the new one. *See Martin v. Breckenridge*, 14 F.2d 260, 262 (4th Cir. 1926).

acceptance of responsibility.  ECF No. 164 at 4, 8.  At his June 22, 2010 rearraignment and sentencing, he again acknowledged that he understood and had voluntarily entered into the June plea agreement.  ECF No. 226 at 14:7-10.  Accordingly, the adjustments were proper, and Crowe's decision not to contest them was not error.

        B.    Certificate of Appealability

        A certificate of appealability ("COA") must issue before a petitioner may appeal the decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encourage-ment to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted).  Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

        Because Hayes has not made a substantial showing of the denial of constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, Hayes's motion to vacate, set aside, or correct sentence will be denied.

_____
Date  1/11/12

_____
William D. Quarles, Jr.
United States District Judge